*BEAUREGARD EX'TOR &c. vs. PIERNAS & WIFE.* Spring 1811.
First District.

THis was an action brought to recover, out of the property of the wife, (the husband having become insolvent) the price of a slave, sold by the testator to the husband, by a notarial act of sale, to which the wife became a party, as a su- rety, and as such, in conjunction with her hus- band, hypothecated her property, present and to come. Upon the failure of the husband, a suit was instituted against the wife, before the Span- ish tribunal, in which, an order of seizure was granted, and certain property of the wife seized by the alguazil mayor and put in deposit ; but all proceedings therein, had been suspended by the change of government.

*Wife, becom- ing surety for her husband must especially renounce the laws in favour of women & wives.*

*Ellery* for the plaintiff. In this suit I rely,

1. Upon the Spanish proceedings.

2. Upon the notarial bill of sale, to which the wife, as surety, voluntarily made herself a party, and which, by the laws of this country, makes the contract binding upon her, and renders her property liable, upon the default of her husband.

I. From an examination of the Spanish pro- ceedings, it appears that this suit, before the Spanish tribunal, had gone through its several stages, and that the legal contestation of the par- ties terminated in an execution, by virtue of which, the goods of the wife had been seized, and put into the custody of the law, from which

Nn

Spring 1811.
First District.

Beauregard
Ex'tor &c.
vs.
Piernas &
Wife.

they were only released by the change of government, which suspended all judicial proceedings. This execution, or *fi. fa.* into which the order of seizure granted in the beginning of the suit had ripened, always supposes, as indeed does an order of seizure, (if in this case, it should be construed to be an order of seizure, rather than an execution) a previous judgment to support it, either judicially delivered, or legally implied, from the nature of the instrument declared upon, which by the principles of the Spanish law, may either import a *confession of judgment*, or carry with it the *authority of the thing judged.* In this case, the proceedings before the Spanish tribunal, were matured into an execution, proceeding from a judgment, judicially delivered and which, though not pronounced in the form of our judicial decisions, is yet sufficiently clear and certain. The counsel of the defendant, must, therefore, dispose of this judgment, before he comes to the intrinsic merits of this action.

II. Should the court not be with me upon this point, I rely, with confidence, upon the nature of the instrument produced, which is not only founded upon the principles of the Spanish law, but minutely and laboriously observant of all its forms and technicalities. The Spanish law, like the common, supposes the wife under the coercion of her husband, and examines with attention, if not also with jealousy and suspicion, every act executed by her during coverture,

in favor of her husband, and a variety of pro- SPRING 1811.
First District.

BEAUREGARD
EX'TOR &C.
vs.
PIERNAS &
WIFE.
visions have been made to secure her rights
and privileges from infringement or invasion.
But this has not been carried so far, as wholly
to lock up her property, or to deprive her totally
of the power of pledging or alienating it. Her
privileges are all summed up in the 61st law of
*Toro*, as inserted in the *Recopilacion de Castilla*,
and found also in the *Partidas*. Of this law, the
leading principle is, that the wife shall not be
bound *in solidum* with her husband, or become
a surety for him. *Recop. de Cas. T. 1. L. 7.
F.* 709. But to this principle, there are excep-
tions, and the present case will be found to fall
under them. These exceptions are numerous
and important, of which the third meets and
embraces our case, viz : " That when the wife,
" apprized and knowing, that she is not allowed
" or compellable by law, to be a surety, af-
" terwards renounces her privilege, and waves
" the right which the law secures to married
" women, in this behalf." " *La tercera es,*
" *quando la muger fuesse sabidora e cierta que no*
" *podia nin decia entrar fiadora : si despues lo*
" *fiesse, renunciando de su grado y desamparando*
" *el derecho que la ley otorgo à las mugeres en esta*
" *razon*" 5 *part.* 3 *l.* 12 *p.* 2 *Feb. de escrit.* 4 *c.*
35. *n.* 125. Now by the notarial bill of sale,
we find, that the wife was fully knowing and ap-
prized of the existence and purport of the laws
made in her favor, and voluntarily and deliber-

SPRING 1811.
First District.

BEAUREGARD
Ex'TOR &c.
vs.
PIERNAS &
WIFE.

ately renounced them, and that this renunciation was made in a solemn and legal form. Thus have we brought ourselves completely within this exception, and should the judgment of the Spanish court be questioned or denied, still are we entitled to the amount we claim, by virtue of this notarial act, to which the wife voluntarily and knowingly made herself a party, and bound herself in conformity to the principles and forms of the Spanish law, and made her property liable, upon the default of her husband.

*Moreau* for the defendant. As it respects the order of seizure, granted by the Spanish tribunal, although called an execution, no great reliance can be placed upon it. It is a provisional order of seizure and rather in the nature of an attachment, than an execution; it terminates, indeed, in an execution, if not opposed; but it is always notified to the defendant, who has three days within which to make his defence or opposition; here such defence or opposition was made, and no definitive judgment has been pointed out, or was rendered; the proceedings were left incomplete at the cession. With regard to the bill of sale, wherein the wife became a surety for her husband, it will be found illegal and invalid, and not made conformable either to the principles or forms of the Spanish law. This law is not only unfavorable to, but prohibitory of any such engagement, on the part of the wife.

The wife is considered as a minor. And her rights are not only liberally extended, but jealously watched, and securely guarded. But we are told of exceptions, and that the present case makes one of these exceptions. To this effect, the third exception has been quoted, but too many of the legal requisites and provisions have been neglected or violated, to permit the party to hope for the benefit of this exception, and I will proceed to shew,

1. That the wife was not duly authorised to become a surety for her husband.

2. And if so authorised, that she has not legally renounced the laws forbidding her to become such surety.

3. That the property purchased, has not been proven, as the law requires, to have been converted to her use, or purchased upon her account.

I. The 2 *law*, 3 *tit*. 5 *lib*. of the *Recopilacion de Castilla* ordains, that the wife can neither make a contract, nor renounce those in her favor, nor appear in court either as plaintiff or defendant, without the express authority of her husband. But in this bill of sale where she is brought to be made a surety, no such authority is given. It is true, that the clause of surety is inserted in the bill of sale, and therefore a tacit authority may be thought to be inferred, but the law upon this point, is imperative, and requires a formal written act of

Spring 1811.
First District.

Beauregard
Ex'tor &c.
vs.
Piernas &
Wife.

SPRING 1811. authorisation. *Pot. traité de la puissance ma-*
First District. *ritale* 67. *n.* 69. 2 *Febrero, Libreria de escri-*
BEAUREGARD *banos* 99. *cap.* 6 *s.* 4. *n.* 109.
Ex'TOR &c.
*vs.*       II. The law 2 *tit.* 12, *Partida* 5, which is
PIERNAS & drawn from the famous senatus-consultus Vel-
WIFE.     leianus, forbidding a woman to become surety, an-
nuls all obligations contracted in violation of its
disposition. The reason is, that it is presumed
that it is thro' ignorance or weakness that she
binds herself for another.

THIS reason operates more powerfully in the
case of a wife, who binds herself for her husband.
The law 61 of *Toro*, which is the *l.* 9, *tit.* 3. *lib.*
5, *de la Recopilacion de Castilla*, declares null
and void, any obligation contracted jointly with
her husband, or to secure any debt due from
him : even when the instrument mentions that the
obligation is contracted for her benefit : unless
it be actually proved that it turned to her ad-
vantage, and that the thing, which is the object
of the obligation, is not one of those which the
husband is bound to supply : as raiment, food and
others necessary to her.

III. It is true that the law 3, *tit.* 12, *Partida* 5,
contains an exception to that which forbids
women becoming sureties, authorising them to
derogate from a law established for their benefit.
But, how is this derogation from the law, this
renunciation of the benefit, to be effected in or-
der to validate the suretyship ? It is necessary,
says the law cited, that the woman have a certain

SPRING 1811.
First District.

BEAUREGARD
Ex'TOR &c.
*vs.*
PIERNAS &
WIFE.

knowledge, *sea sabidora y cierta*, of the disposi-
tions of the law, to which she is about to re-
nounce.

*Febrero* requires that the notary, who receives
the instrument, should explain these disposi-
tions to her, 2 *Libreria de los Escribanos, cap.* 4
*s.* 4 *n.* 15. If it appears from the drawing of
the instrument, or from the interrogatories put
to him, that he is not well acquainted with the
laws, to which he makes a woman renounce,
the instrument is to be declared void, because,
says *Febrero*, the notary cannot properly have
explained what he was not well acquainted
with. *id.*

HENCE the wife must expressly renounce
to the prohibitory law established for her be-
nefit : and a general renunciation to all laws
concerning women would not suffice to give
effect to her obligation as surety. 2 *Colomb.
Instruccion de Escribanos,* 154. *n.* 4.

HERE the notary has caused the wife, to re-
nounce to the benefit of the law 61 *de Toro* or
the law 9. *tit.* 3, *lib.* 5. which are the only
Spanish laws, declaring that a wife cannot be-
come surety for her husband. He has also caus-
ed her to renounce *generally* to the laws of the
Emperor Justinian, to the senatus-consultus Vel-
leianus, to the laws *del Toro*, of Madrid, of the
*Partidas*, to the ancient and modern constitutions,
and to the others laws in favor of women : that
is to say, to a crowd of laws mostly foreign to

SPRING 1811.
First District.

BEAUREGARD
Ex'tor &c.
*vs.*
PIERNAS &
WIFE.

the subject, in which no doubt are mixed with others, most of, and likely all, the dispositions to which it was necessary she should renounce, in order to give validity to the contract, and of which the notary ought carefully to have given her, detailed and particular information. This bungling way of making the renunciation announces the confused idea which the officer had of these laws, and shows how impossible it is that the wife should have had a clear and distinct view of the dispositions in her favor, in a number of laws so generally and vaguely cited. Lastly, when the notary was particularly interrogated, by the Spanish judge, and required to specify the particular laws, by titles and numbers, which he had informed the wife were to be renounced, his answer clearly indicated that he had no correct idea of what it was his duty to explain to her.

IT is conceded that if it were in proof that the contract for the performance of which she became surety had been for her benefit or advantage, the court ought not to listen to her objection. But of this, there is not the slightest proof. For the declaration drawn from her, in the notarial instrument, cannot prejudice her according to the authority cited *l.* 9, *tit.* 5, *lib.* 5, of the *Recopilacion de Castilla.* For if this declaration were to bind a wife, it would be easy to elude all the laws provided for her defence and

protection, and it would be in vain to have es-
tablished it as a principle that the husband can
in no ways alien or bind the dotal property of
the wife during the coverture, *even with her*
*consent.*

*Ellery in reply.* The court will determine,
from an inspection of the Spanish record, whether
the executory proceedings had in the suit, be-
fore that court, were limited to a provisional or-
der of seizure, or whether they did not ripen
into an execution. The provisional order of
seizure is the first process of the court, and was
here issued in May 1798, and it was not, until
July following, that execution was ordered, and
not until the succeeding September, that the pro-
perty of the defendant was seized by the algua-
zil mayor, and put in the hands of the public
depositary, where it remained until the cession.
But we are not obliged to rely upon the Spanish
proceedings, the nature of the instrument pro-
duced, and the form of its execution, bear us
fully out in our claim. We have proven by it,
that the wife voluntarily made herself a surety for
the payment of the debt, and that she renounced
all the laws existing in her favor.—But it is ob-
jected,

1. That she was not duly authorised by her
husband to become such surety, and that a no-
tarial act to this effect, on the part of the hus-
band, should have been first executed. This

Oo

SPRING 1811. undoubtedly would have been necessary, were
First District. the wife to become a surety for a *third* person,
BEAUREGARD in order to protect her husband from the effects
Ex'TOR &c. of any rash engagement into which the wife
*vs.*
PIERNAS & might be seduced, but certainly it cannot apply
WIFE. to a case where she acts for and with her hus-
band. Her signing the instrument before a no-
tary public, in presence of, and in conjunction
with her husband, is sufficient authority. Again
if this authority is to be questioned, by whom,
but by the husband can it be questioned?

2. But it is next contended, that even if the
wife were duly authorised so to sign as a surety,
still, the clause of renunciation is too vague
and indefinite, and that instead of renouncing
all and every law made in her favor, the wife
ought specially to have enumerated and distinct-
ly renounced the 61st law of *Toro.* But in the
*Partidas*, (the original text) no form of renun-
ciation is prescribed or indicated; and though
a particular form is suggested in *Febrero* (who
is a mere commentator,) still it is not by him
stated, to be a necessary, but only a convenient
one, and may or may not be adopted. He him-
self observes, that it is not necessary to the va-
lidity of the obligation, but only conducive to
the neatness of the instrument in which the
obligation is contained, and is given, as he quaint-
ly expresses it, to guard notaries from the com-
mission of *classical* errors, and the unnecessary

repetition and renunciation of laws which have SPRING 1811.
First District.

BEAUREGARD
EX'TOR &c.
vs.
PIERNAS &
WIFE. no bearing upon the subject. We do not deny the necessity of a clause of renunciation on the part of the wife, but we contend that the one here inserted is sufficient. It is, indeed, difficult to imagine one more solemn, to which are superadded the rites of religion, the solemnity of an oath, and if violated, the imprecation of infamy. The words are remarkable. The wife, here renounces the laws of the Emperor Justinian, the senatus consultus Veleianus, the laws of *Toro* and of Madrid, the new *Partida*, and the old constitutions, as well as all other laws enacted in favor of the wife, acknowledging that she has been informed of them, and that with this knowledge, she renounces them, and then *swears* by our Lord, making the sign of the cross, according to law, that to execute this instrument, she was not enticed nor intimidated, by her husband, nor by any other person, and declares that she did it of her own free will and authority, in order to convert the property purchased to her own use; and that to invalidate this oath, she has made no protestation or mental reservation, and even if authorised to revoke it, that she will not, neither will she receive any absolution, relaxation, or change therefrom, either from our holy father the pope, his nuncio, or legate, or any one invested with authority to this effect, and if it should be dispensed with, that she will not avail herself of such

SPRING 1811
First District

BEAUREGARD
Ex'tor &c.
vs.
PIERNAS &
WIFE.

dispensation, under pain of perjury, and of fall-ing into infamy &c. It is difficult to dress up a clause of renunciation with more solemnity, or to invest it with greater terrors. It also close-ly follows the form pointed out by the classic *Febrero* vid 2 *Feb. de Cont. cap.* 4 *s.* 4 *Ar.* 117. But it seems, that the 61st law of *Toro*, is not particularly recited and renounced, in conformity to the form given by *Febrero*. I have already stated that it is not required by the *Partida*, and that it is not made indispensably necessary by *Febrero*. But suppose it were, in renouncing all the laws of *Toro*, is not the 61st law of *Toro* renounced? In renouncing the whole, are not the parts forming that whole, renounced? And was it not stronger on the part of the wife, as well as safer on the part of the Notary, to re-nounce every law, than to limit the renunciation to any particular law? *Febrero* to be sure thinks it sufficient to renounce only the 61st law of *Toro*, but *Martinez*, it seems, another commentator, makes mention only of the *Partida*, and per-haps, another commentator might be found, who thinks other laws equally necessary to be the sub-ject of renunciation. In these perplexed paths, what guide are we to follow, and who will de-cide, when doctors disagree? One says, re-nounce the *Partida*, another the 61st law of *Toro*. According to one, if we step out of the *Partidas* we are lost, according to the other, there is no safety but in the 61st law of *Toro*. Even if

both had been renounced, and the extension of the clause of renunciation to embrace the two, had not weakened its validity, still is it not probable that in the numerous codes of laws, forming the motly system of Spanish jurisprudence, (laws always increasing, and never expiring) that some pretermitted clause or provision, some dormant principle, buried in the legal lumber of ages, might be dug up to destroy this instrument. The navigation among these codes and *Recopilacion* is certainly difficult and dangerous, thick-set with points, and abounding in sands and shoals : the path dazzled by the deceitful lights of expositors, and pursued with unskilful pilotage ; we have weathered the *Partidas* and the *Recopilacion*, we have steered clear of the laws of Madrid and *Toro*, but is there no risk of striking upon the *Fuero Real*, or *Fuero Juezgo*, or being lost upon the shoals of the *Ordonamiento*, even a senatus consultus Veleianus, or an unheeded law of Justinian might prove fatal to our voyage. Safety, therefore, required, that we should insure against all these laws. But it is suggested that the notary could hardly have time to instruct the wife in all the laws, which she is here made to renounce ; neither was it necessary : it was sufficient, that he apprized her, that there were laws in existence in the different codes, by which her rights were protected, and she secured from the coercion of her husband, by which she was not obliged to become a surety for him,

Spring 1811,
First District.

BEAUREGARD
Ex'tor &c.
*vs.*
PIERNAS &
WIFE.

SPRING 1811.  without her free consent, and that if she wished
First District.  to give validity to the instrument, that she must
BEAUREGARD  renounce them.   Again, a notary public, is an
Ex'TOR &c.
*vs.*  officer worthy of credit, whose acts import ve-
PIERNAS &  rity, and if her renunciation is there recorded,
WIFE.  we have no right to travel or enquire out of this
record.   When a wife, under the common laws
releases her right of dower, the certificate of the
judge or justice of the peace, before whom the
release is made, that she did it free from the
coercion of her husband, is sufficient.

*By the Court.*   It clearly appears that the pro-
ceedings before the Spanish tribunal, had not
ripened into a final judgment.   It is true, at the
inception of the suit, a writ of seizure was award-
ed against the property of the husband and after-
wards another against that of the wife, but these
writs of seizure, like writs of attachment, are
original writs to bring in parties into court, as
the nature of the case requires.

THE renunciation of the wife, is not, as the
plaintiff contends, a *matter of form*, introduced
by practitioners.   The civil law considers wo-
men generally to certain purposes as in a kind of
perpetual nonage and the *law* 2, *tit.* 12, *part.* 5,
declares null all contracts of suretiship, entered by
a woman, for any other person than her husband.
It is true that the *law* 3, *tit.* 12, *part.* 5, allows
a woman to renounce the former, but it requires
she should be made acquainted with its provisions.

*Febrero*, informs us, that the notary, who re-
ceives the contract, is bound to make the wo-
man acquainted with the disposition of the law
in her favor, and the consequences of her renun-
ciation, and he ought to certify that this has been
done, 2 *Libreria de los Escribanos, cap.* 4, *sect* 4,
*n.* 115, unless he takes the trouble to recite at
full length, the law itself. If he neglect to do
so and does not apprise the woman, he incurs
corporal punishment, and *the act ought to be de-
clared* NULL. *Loco citato.*

THE act is also to be annulled, if it appear
by the interrogatories that the notary was not him-
self master of the dispositions which it was his
duty to make known. *id.*

IN the present case, from the generality of the
laws cited, out of the Spanish and Roman codes,
we are perhaps justified in presuming the igno-
rance of the notary. His examination manifests
his inability to refer to the particular law of the
*Toro*, all of which, 83 in number, are renounced
in the lump. The case is rendered much strong-
er from the deposition of a person, present at
the execution of the act, who contradicts the no-
tary in the belief which he expresses of the ability
of the wife to have understood these laws, had
they been read to her, from her very imperfect
knowledge of the Spanish language.

IF this renunciation be *stricti juris*, when the
wife becomes surety for a stranger, as she then
has the aid of her husband, it is much more to

SPRING 1811. be required, when *inops consilii*, he makes her
First District. take an engagement for his benefit : since the
BEAUREGARD civil law, in order to protect the wife, against
EX'TOR &c. the consequences of conjugal affection, will not
*vs.*
PIERNAS & allow her dotal property to be aliened, during the
WIFE. converture, even with her consent. *Law* 7 *tit.* 11.
*Part.* 4. For it would be to expose her to re-
main without property, *indotata*, to allow her to
become his surety, since on defect of his, her
goods would have to be taken.

ON this principle, the law 61 *del Toro*, which
is the *law 9, tit. 3. lib. 5, de la Recopilacion de
Castilla*, declares void, any contract in which
the wife binds herself *in solidum* with her hus-
band, or becomes his surety for any debt of his,
unless contracted for her particular benefit, and
for some article which he was not bound to pro-
vide for her. This last law, has no clause allow-
ing a renunciation to its dispositions, but, it ap-
pears, that the courts of Spain have in prac-
tice, construed it as admitting it.

BUT, the uniform opinion of every Spanish
writer is, that, when the wife becomes surety
for the husband, the instrument is to be clothed
with all the formalities required, in cases in which
she binds herself for another person.

*Colom*, formally says, that in all cases of sure-
tyship, the laws in favor of women, must be
SPECIALLY renounced, because A GENERAL
*renunciation to all laws in favor of women, would*

*not be sufficient to render the instrument valid.* SPRING 1811.
2 *Libreria de los Escribanos,* 154. *n.* 4. First District.

*Febrero,* speaking of general renunciations, says, they are absurd, and tend only to introduce error and confusion.

THIS point was also determined, in a judgment rendered in this city, when under the dominion of Spain, July 13th 1803, in the case of *Fletcher* vs. *Piernas.*

As we are of opinion, that the renunciation ought to have been special, it is unnecessary to inquire, whether the wife ought not to have been authorised.

JUDGMENT FOR THE DEFENDANT.